SOUTHERN LIGHT AND TRACTION CO. *v.* CHARLOTTE COMPTON.

1. STREET RAILROAD. *Passengers. Separation of races. Laws* 1904, *ch* 99, *p.* 140. *Ejection of female passenger. Justification. Punitive damages.*

Where a female passenger was rudely ejected from a street car by the conductor and compelled to walk some distance in the mud, because of her refusal to comply with an unwarrantable demand of the conductor that she change her seat in the car:

(*a*) The street railway company cannot invoke in its defense the provisions of the statute, Laws 1904, ch. 99, p. 140, requiring the separation of the white and colored races on street cars, and authorizing the use of adjustable screens, for separating them, and the ejection from the cars of all passengers who refuse to accommodate themselves to the space allotted to his race, if the company has never adopted the appliances required by the statute, whatever it may have done in an effort to evade the law on the subject; and

(*b*) Punitive damages may, in the discretion of the jury, be awarded her.

2. SAME. *Concrete case. What not a compliance with law.*

Signs eight by twelve inches in size, having painted thereon the words "White" and "Colored," respectively, and supported on the backs of seats in street cars, are not "adjustable screens" within the meaning of Laws 1904, p. 140, ch. 99, requiring the separation of the white and colored race on street cars, but permitting the use for that purpose of adjustable screens, to be moved about as the needs of the traffic may require.

FROM the circuit court of Adams county.

HON. MOYSE H. WILKINSON, Judge.

Miss Compton, the appellee, a white person, was plaintiff, and the traction company (a street railway company) was defendant in the court below. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

On the trial the evidence for plaintiff was to the effect that appellant was operating a street car system in the city of

Natchez, and on or about August 26, 1904, plaintiff and three white lady friends boarded one of its street cars and rode out to a park, where the street car was reversed and preparations made to return. The conductor placed two signs, about eight by twelve inches, supported by two pegs on the back of the seats, having painted on one side the word "White" and on the other "Colored," about the middle of the car, and they remained there for some time until the part for the colored people began to fill up, and some of them were standing. There were no passengers in the white compartment except plaintiff and her companions. The conductor approached plaintiff, who was sitting on the first seat in the white compartment next to the sign, and asked her to move forward, so he could move the sign up to let the colored people have more room. Plaintiff declined to move, when the conductor in a rough tone demanded that she move forward, and seized her by the arm, and again demanded that she move forward, and told her that she must move or get off the car, and rang the bell for the car to stop, when plaintiff and her companions got off the car, and had to walk some distance in the mud.

*Ratcliff & Clinton,* for appellant.

The conductor requested the plaintiff to move her seat forward, so that he could move the screens and give more room to the colored passengers. The appellee declined to move and gave no reason for her refusal, except that she was comfortable where she was, and didn't want to give up her seat to a negro. This was the burden of her complaint, because when pressed to explain in what manner the conductor was offensive she replied that the mere fact of being asked to move her seat that a negro might occupy it was very offensive.

If the conductor had the right, under the law, to readjust his screens to accommodate the volume of the traffic of the races, as we contend he did have, he then, necessarily, had the right to assign the passenger to a seat and to request the appellee

to change her seat; and when she declined, he had the right to eject her from the car; but of course it was incumbent upon him to perform this duty without insult, abuse, or unnecessary force or violence, and unless he did insult and abuse plaintiff, or exercise unnecessary violence, the plaintiff would not be entitled to recover anything. *L. & N. R. R. Co. v. Maybin,* 66 Miss., 83. There is no pretense that any insulting words were used by the conductor, but appellee says he assumed an aggressive attitude and raised his voice, and that he caught her by the arm with a view of raising her from her seat, and gripped her arm tightly, so that it gave her some pain.

Therefore, we insist that the evidence in this case does not make a case for punitive damages, and the court erred in giving instructions on the subject of punitive damages. *L. & N. R. R. Co. v. Maybin,* cited above, and *Miss. & Tenn. R. R. Co. v. Gill,* 566 Miss., 39. An aggressive attitude and mere brusqueness do not authorize the infliction of punitive damages. We contend that the conductor had the right to take hold of her arm and to use all necessary force to eject her from the seat, but it is evident that he stopped short of the force necessary, according to the plaintiff's own statement, because he did not eject her by taking hold of her arm, but she only decided to move when the conductor declined to move his car, and it is clear that he was not violent, nor did he use excessive force in taking her by the arm.

*Brown & Martin,* for appellee.

The determination of this appeal will largely depend upon the proper construction of ch. 99, Laws 1904, commonly known as the "Jim Crow Car Law."

The clear legislative purpose of the statute was the effectual separation of the white and black races when riding in street cars. This separation was to be a real, and not an imaginary, one, in the purview of the law. This separation was to be obtained by the common carrier providing either separate cars or cars

divided into separate compartments by partitions or screens that would practically shut one compartment off from the other. Inasmuch as the relative proportion of travel by the two races would vary widely at different times, the law wisely provided that these partitions or screens might be so constructed as to be adjustable in the car, so as to enable the conductor to meet the exigencies of the traffic; but whether made adjustable or not, the partitions or screens must be genuine screens, and not mere signs. The statute is strictly in line with Code 1892, § 3562, wherein similar provisions are applied to ordinary railroad cars, differing only in the provision as to adjustability, for which difference common observation and experience furnishes the reason. The evidence in this case showed that appellant had not complied with the statute in the equipment of this particular car. Their alleged screens were nothing more nor less than signs, and small ones at that; and appellant in operating such a car was guilty of a misdemeanor. Inasmuch as the car was not fitted up as required by law, the statute conferred no power whatever upon the particular conductor; and in determining the rights of appellee, the case was governed by general principles, irrespective of the statute and uncontrolled by it. Appellee had taken her seat and paid her fare, and had thus acquired a vested right in that seat, which the conductor could not deprive her of. When he stopped the car and ordered her to either leave her seat or get off the car, this was tantamount to an ejection, and she had the right to disembark without impairing her cause of action, the quantum of damages being the only question remaining.

Argued orally by *E. E. Brown,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The use of a sign, such as the one shown by the testimony in this case, is not a compliance with, but an evasion of, the act of 1904. Laws, p. 140, ch. 99. The dominant and controlling

purpose of this statute—one most unfortunately framed—was to secure a real separation of the white and colored races on street cars. This was a wise purpose, and the court must effectuate that purpose. The object of the law was to prevent race conflicts, which would be inevitable under the enforcement of this statute, in accordance with the view that this sort of a sign is a screen. The same object is accomplished as to railroads by Code 1892, § 3562. What was meant to be done in the case of street railroads was to so completely and effectually separate or screen passengers of one race from passengers of the other, on street cars, that there would be no association in any way of one race with the other. And yet, with this being the clear purpose of the statute—the wise and wholesome intention of the lawmakers—we find a lot of unfortunate minor provisions in the statute calculated to overthrow the main purpose of the law. The provision that the conductor may have an adjustable screen, and may move that adjustable screen about as the needs of the traffic require, is a provision so manifestly unwise, and so clearly subversive of the dominant feature of the statute, as to make it a matter of wonder that this result should have escaped the attention of the lawmakers. The learned counsel for appellant put this case: Suppose, say they, the car started with two passengers, one white and one black, the white one in the white compartment and the black one in the black compartment, and that the law means that the screen, once fixed, is not to be again moved. Then suppose that after traveling some distance the black compartment fills completely up, and becomes filled besides with negroes standing. There could be no moving of the screen so as to seat the standing negroes, although there should be but the one white person in the white compartment. And this is a perfectly just illustration to show that the construction of the statute, on this minor feature, contended for by counsel for appellee, is not admissible within the literal letter of the act. But it also shows clearly

the unwisdom of having such a provision in the statute at all. The opposite case might just as well occur—of the white compartment filling to overflowing with white passengers standing, with only one negro in the colored compartment. But take another view of the practical operation of the statute as written. Suppose the conductor, when the car started, had what he had here, a couple of white ladies occupying a seat in the white compartment next to the sign supposed to separate them from the colored compartment, and suppose that in the conductor's best judgment the sign should be stuck up so as to leave but two rows of seats for colored persons, and all the rest for whites. Then, according to the letter of the statute, insisted upon by counsel for appellant, the conductor could move these ladies, accordingly as the number of colored passengers increased, if no other white persons got on, from seat to seat forward, advancing the sign each time, as many times as there would be seats unoccupied in the white compartment. Is it possible that the legislature meant to authorize a conductor thus to move passengers who had paid their fare and taken proper seats—seats, too, assigned to them by the conductor—and to eject them from one seat, and put them into another, it may be as many as a dozen times, because the needs of the traffic required it? And yet this act is written just that way, and there is no interpretation that can be put upon it—that is to say, this particular feature of it—other than the one which the learned counsel for appellant press upon us, without making a law instead of interpreting it. From which it follows inevitably that if this, the minor feature of the statute, was all there was for our consideration in this case, this judgment would necessarily have to be reversed, because the statute expressly authorizes—nay, requires—the conductor to move the partition or screen about, according to the needs of the traffic, and to put all passengers who refuse to conform to his demands off the car. We have thus commented upon the features of the statute indicated in order to show the necessity which exists.

that the legislature should promptly repeal this exceedingly unfortunate statute, and provide a statute for street cars similar to sec. 3562 of the code. But that which saves the case plainly and clearly is that the appellant has not at all complied with the main provision of the statute and the controlling purpose of the act. It has not provided any separate cars for the two races, or any separate compartments for the two races, or any adjustable, movable partitions or screens to separate the two races. The little piece of board, called a sign, stuck up on the back of a seat, with words painted on it, is no partition or screen within the meaning of this law. The very words "partition" or "screens" *ex vi termini* import complete separation between the races in street cars, so that passengers in one compartment shall be shut out from passengers in the other. The object of the law was absolute, complete, and perfect separation, so that there should occur none of the outbreaks and conflicts marring the public peace, and ending, it may be, in bloodshed. Nothing but constant friction could possibly arise from the use of a mere little sign, exasperatingly shifted about from point to point, requiring passengers to change their seats, already assigned, whenever a conductor "dressed with a little brief authority" chose. Such the evidence shows was the sign used in this case. It separated nothing; it screened nothing; it partitioned nothing. The word "screen," as well as the word "partition," imports that one race is to be shut out from any sort of contact with the other. Everybody knows what a screen or partition is, and everybody knows that a sign such as was used in this case is no partition or screen whatever within the meaning and purpose of this law. It ought to be the study of corporations operating street car lines within communities wherein dwell two distinct races so to operate them as to secure the utmost harmony and peaceful relations between them in public travel. That was the object the legislature had in view in the enactment of this law. That is what the terms "separate cars," "compartments," "partitions," and "screens" intended

to secure. The statute has used no such word as "sign," and it is asking far too much of a court to find in a little piece of painted plank, separating nothing, the partition or screen which the law has demanded shall be used.

In view of the fact, therefore, that the appellant has itself violated the law in not having such a partition or screen as the law requires to secure the separation of the races, the appellant is in no position to insist upon an observance of the minor features of the statute. We cannot thus tithe the "mint, the anise, and the cumin, and neglect the weightier matters of the law." He who disregards plainly the great and dominant feature of the statute is in no position to assign errors growing out of a supposed disregard of minor features of that statute. There was evidence warranting punitive damages, if believed by the jury. For this reason we think the right result has been reached in this case, and the judgment is

*Affirmed.*