MISSISSIPPI POWER & LIGHT CO. *v.* GARNER.

(Division B. Oct. 4, 1937. Suggestion of Error Overruled Oct. 18, 1937.)

[176 So. 280. No. 32812.]

May & Byrd, of Jackson, for appellant.

590

Jaap & Higgins and **Louise Melton,** all of Jackson, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Jessie Lee Garner, a colored woman, plaintiff in the court below, brought suit against the Mississippi Power & Light Company, appellant, claiming damages from an assault made upon her by a white passenger of appellant, while appellee was also a passenger and occupying a rear seat in appellant's bus. The suit was based upon the violation of chapter 332, section 9, Laws of 1932, the last paragraph of which reads as follows: ''All motor transportation companies or operators of vehicles carrying passengers for hire in this state, whether intrastate or interstate passengers, shall at all times provide equal but separate accommodations for the white and colored races by providing separate vehicles, or separate compartments on each vehicle, or by dividing the vehicle by a partition constructed of metal, wood, strong cloth or other material so as to distinguish the separate sections for the separate accommodation of the races. The conductor or agent of the motor transportation company

in charge of any vehicle is authorized and required to assign each passenger to the division of the vehicle designated for the race to which such passenger belongs; and if the passenger refuses to occupy the division of the vehicle to which he is so assigned by the conductor or agent of such transportation company, such conductor or agent of such motor transportation company may refuse to carry such passenger on said vehicle, and for such refusal neither the conductor or agent of the motor transportation company, nor the motor transportation company shall be liable in damages.''

The court below rendered a verdict awarding the appellee $1,000 damages, and the appellant files this appeal therefrom.

It was alleged in the declaration that it was the duty of the appellant to have a partition in said bus to separate the white and colored races, but that said appellant, instead of complying with the law, simply had a little tin sign attached to the top of a seat, four by eight inches wide, with the word ''white'' on one side, and the word ''colored'' on the other side; that appellee boarded the bus at the stop in front of Sutton's Ice Cream Parlor, and after paying her fare retired to the extreme rear thereof and took the very last seat in that section designated by this small sign as being reserved for the colored race, and that there was only one other colored person then on the bus; that a little later the bus began to fill up, and, when the bus reached the Edwards House, the white section was full and several white gentlemen were standing, and one of these walked back to where appellee was seated and ordered her to give him her seat. She stated to him that she was unable to stand, and that she would get off at Farish street, whereupon said white passenger struck appellee once about her left eye, and once over her mouth, knocking her violently to the floor of the bus, and throwing her against another seat; that, at that time, she was pregnant, and as a result of said assault she suffered great pain, and a mis-

carriage resulting therefrom, and she was greatly injured. That she was confined to her bed from said 31st day of August until about the middle of November of that year, when she was delivered of a dead child. Two physicians testified as to the time appellee was confined to bed; as to her bruised condition, and that she suffered a miscarriage.

The appellee introduced an adjuster of claims for the appellant, who testified that the busses were divided only with a little marker as described in the declaration, and that the appellant had notice of prior assaults on colored people by white men in the busses. This testimony was objected to, but the objection was by the court overruled.

Chapter 332, Laws of 1932, a portion of which is quoted above, is almost identical with the language used in Chapter 99, Laws of 1904. In 1905, this statute was construed in the case of Southern Light & Traction Co. v. Compton, 86 Miss. 269, 38 So. 629, the court there holding that signs eight by twelve inches in size, with the word "White" on one side, and the word "Colored" on the other, on the backs of seats in streetcars are not in compliance with the statute thereon, and that "What was meant to be done in the case of street railroads was to so completely and effectually separate or screen passengers of one race from passengers of the other, on streetcars, that there would be no association in any way of one race with the other. And yet, with this being the clear purpose of the statute—the wise and wholesome intention of the lawmakers—we find a lot of unfortunate minor provisions in the statute calculated to overthrow the main purpose of the law. . . . The little piece of board, called a sign, stuck up on the back of a seat, with words painted on it, is no partition or screen within the meaning of this law. The very words 'partition' or 'screens' ex vi termini, import complete separation between the races in street cars, so that passengers in one compartment shall be shut out from passengers in

the other. The object of the law was absolute, complete, and perfect separation, so that there should occur none of the outbreaks and conflicts marring the public peace, and ending, it may be, in bloodshed.''

With this construction placed upon it, the statute was re-enacted in the Code of 1906, sec. 4059 et seq., and again in the Code of 1930, sec. 6132 et seq., and, however much we might be disposed to disagree therewith, we are bound thereby, because the Legislature re-enacted it without change and thereby adopted the original construction placed upon it. 13 Mississippi Anno. Digest, Statutes, sec. 225¾ and cases there cited. Under the present statute, it is the duty of a conductor or agent of transportation companies to place the passengers in separate compartments, and, if a passenger refuses to occupy same, the company may refuse to transport him, and no liability attaches to the company for such refusal.

This suit arose prior to the enactment of chapter 23, Laws of Extraordinary Session of 1936, hence it cannot be applied to the present controversy.

It is urged that the failure to have separate compartments was not the proximate cause of appellee's injury. Inasmuch as it was the duty of appellant to see to it that the passengers occupied separate compartments, it cannot be said that appellant complied with the law. The object of the law in requiring separation of the races, as stated in the case of Southern Light & Traction Co. v. Compton, supra, is to avoid outbreaks and conflicts which mar the public peace.

The appellee proved by appellant's claim adjuster that there had been like complaints at other times, and, while this evidence was objected to, we think it was admissible.

We do not find any reversible error in the instructions given or refused, and the judgment of the court below will be affirmed.

Affirmed.

ON SUGGESTION OF ERROR.

**Griffith, J.**, delivered the opinion of the court on suggestion of error.

In the former opinion the following paragraph was included: "The appellee proved by appellant's claim adjuster that there had been like complaints at other times, and while this evidence was objected to, we think it was admissible." Upon a consideration of the suggestion of error, we have determined to withdraw the quoted paragraph and to say instead thereof that if the said evidence was inadmissible, nevertheless it was not materially harmful, in view (1) of the moderate amount returned by the jury in the assessment of damages, and (2) that it could not be safely said that it was a substantial factor in causing the jury to find for plaintiff for some amount in damages.

Suggestion of error overruled.